UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.

OLGA AYO,

      Plaintiff,

v.

MATUS VARGA, and VARGA'S
IMMIGRATION ATTORNEYS, PLLC,
d/b/a/ IMMIGRATION JUSTICE CENTER,
PLLC, a Florida professional limited liability
company,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Olga Ayo (Ayo), sues Defendants, Matus Varga (Varga), and Varga's Immigration Attorneys, PLLC d/b/a/ Immigration Justice Center, PLLC (the Law Firm), and states as follows:

## THE PARTIES

1. Plaintiff Ayo is an individual and is a citizen of Slovakia and a resident of Broward County, Florida.

2. Defendant Varga is an individual residing in Miami, Florida. Varga is a member of the New York Bar and is an attorney. He practices immigration law in this district.

3. Defendant the Law Firm is a Florida professional limited liability company with its principal place of business at 333 SE 2nd Avenue, Suite 2000, Miami, Florida, 33131. Varga is the founder and managing member of the Law Firm.

## JURISDICTION AND VENUE

4. The principal claim asserted herein arises under Section 10(b) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

5. The Court has original jurisdiction of this matter under 28 U.S.C. § 1331(a)(2) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

6. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the claims arising under state law because those claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

7. The Court has personal jurisdiction over Varga because he resides in this district.

8. The Court has personal jurisdiction over the Law Firm because its principal place of business in this district and, therefore, it is engaged in substantial and not isolated activity within Florida.

9. Venue is proper in this district, because Defendants reside or have their principal place of business in this district, and because a substantial part of the events or omission giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b)(1)-(2); 15 U.S.C. § 78aa(a).

## FACTUAL ALLEGATIONS

10. In July 2019, Ayo engaged the Law Firm and Varga to represent her in an immigration matter.

11. At all relevant times, Varga communicated with Ayo relating to the immigration matter using his Law Firm e-mail address, varga@vargasimmigration.com.

12. On or about December 16 and 17, 2019, during Varga and the Law Firm's representation of Ayo in the immigration matter, Varga texted Ayo that he owned a California

company, San Francisco International University Inc. (the Company). He told Ayo that the Company ran a law school in San Francisco, California: the College of Law of San Francisco International University (the Law School).

13. In that same conversation, Varga pitched her the idea of purchasing 50% of the Company's stock from him so she could own the Law School with him. He continued, stating that it would be a good investment for her and there was a lot of profit in running a law school. Ayo said it was interesting but there were no further discussions at that time.

14. On or about January 13, 2020, in an in-person meeting regarding her immigration matter, Varga, unsolicited, again offered Ayo the "opportunity" to co-own the Law School by buying 50% of the Company from Varga. Ayo again resisted Varga's overtures.

15. On January 27, 2020, Varga, again unsolicited, emailed Ayo a link to the Law School's webpage so Ayo could review Law School and its policies in order for her to invest. This email was sent from Varga's Law Firm e-mail address.

16. On February 20, 2020, Varga emailed Ayo the Law School's catalog and the students interested in the Law School to show her the potential profit in owning the Law School and to induce her to buy part of the Company. This email was also sent from Varga's Law Firm e-mail address.

17. On March 13 and 25, 2020, Varga met with Ayo and expressed his opinion that her immigration application would likely be denied and that she needed to have a backup plan to apply as an E-2 immigration investor by buying 50% of the Company.

18. On April 22, 2020, Varga spoke telephonically with Ayo about her immigration application. Varga again brought up Ayo purchasing 50% of the Company, reiterating that it was a good investment and was necessary and crucial for her alternative E-2 immigration application.

19. On April 30, 2020, Varga and Ayo executed a Corporation Stock Sale Agreement (the Agreement) by which Varga sold 500,000 shares in the Company for a total purchase price of $65,000.00. A copy Agreement is attached as **Exhibit "A"**. Ayo paid Varga the full price and performed under the Agreement.

20. Before signing the Agreement, Ayo was not advised to seek the counsel of another attorney.

21. Pursuant to its choice of law clause, reproduced below, the Agreement is governed by California law:

> This Agreement is governed by, construed and enforced by the laws of the State of California. In the event of a dispute the Parties agree that the prevailing Party has the right to reclaim reasonable costs from the other Party, including court costs and expenses as well as Attorney costs.

Ex. A, Agreement at § 6.

22. As noted, Varga repeatedly represented to Ayo he was the owner of the Company's stock and had the authority to sell and transfer the stock to Ayo. Ex A, Agreement at § 2. Varga, however, had no such authority.

23. Rule 4.246 of Division 3 of Title 4 of the Rules of the State Bar of California provides that a change in the ownership of an unaccredited law school in California (like the Company here) requires notice and *prior* approval of the California Committee of Bar Examiners.[1] Varga never disclosed this fact to Ayo.

24. On multiple occasions, Ayo asked Varga for the corresponding stock certificates or other evidence of her ownership of the stock she purchased. Varga produced no evidence of

---

[1] *See* https://www.calbar.ca.gov/Portals/0/documents/rules/Rules_Title4_Div3-UnAcc-Law-Sch.pdf.

Ayo's ownership such as stock certificates, shareholder K-1s, amendment to articles of incorporation, etc.

25. In fact, as of the date of this Complaint, the California Committee of Bar Examiners has indicated to Ayo that it received no notice of any change in the Company's ownership. Nor had it approved any change in the Company's ownership.

26. In addition, while Varga represented in the Agreement that the Company was "a going concern undertaking the business of operating a College of Law of San Francisco International University," Ex. A, Agreement at § 2, shortly after Varga received Ayo's funds, the Law School was shuttered.

27. All conditions precedent to this action have been performed, have occurred, or have been waived.

## COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder (Against Varga)

28. Ayo re-alleges and incorporates the allegations contained in paragraphs 1-27 of this Complaint as is fully set forth herein.

29. From December 2019 until April 2020, Varga carried out a plan, scheme, and course of conduct that was intended to, and did deceive Ayo and caused her to purchase securities (the Company stock) that Varga had no authority to sell.

30. Specifically, Varga induced Ayo to purchase the Company stock by: stating on December 16-17, 2019 and April 22, 2020 that it was a good investment; stating on March 13, 25, and April 22, 2020 that it was crucial for her immigration application; and stating on December 16-17, 2019 and April 30, 2020 that he could transfer the Company stock to Ayo. These statements were not true.

31. In addition to these written and verbal representations, Varga made the following representations in the Agreement:

   a. that "[t]he Seller confirms that he/she is the owner of the Corporation stock that is the subject of this Agreement and has the authority to sell and transfer them to the Buyer on successful closure of this Agreement." Ex. B, § 2. Varga, however, had no authority to sell the Law School stock without the *prior* approval of the California Committee of Bar Examiners, which was never obtained. And this condition was not disclosed to Ayo.

   b. that the Company was a "going concern undertaking the business of operating [the Law School]." To the contrary, the Law School was set to be shuttered and Varga knew it.

32. Varga had actual knowledge of the misrepresentations and/or omissions of material fact set forth above or acted with reckless disregard for the truth in that he failed to ascertain and to disclose such facts even though such facts were available to him.

33. Varga's material misrepresentations and omissions were made knowingly or recklessly and for the purpose of ensuring the fraudulent sale of the Company stock and thereby enriching Varga.

34. Moreover, Varga's material representations or omissions were made within the course and scope of his duties as an employee of the Law Firm.

35. A client of the Law Firm and Varga, Ayo relied on Varga's material misrepresentations and omissions and, as a result, purchased the Company's stock.

36. Ayo is in privity with Varga by virtue of the Agreement.

37. As a direct and proximate result of Varga's wrongful conduct, Ayo suffered damages in connection with her purchase of the Company stock.

WHEREFORE, Ayo demands judgment against Varga for total damages to be determined at trial, but no less than $65,000, plus accrued and accruing pre- and post-judgment

interest, costs, attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNT II (in the Alternative)
### Breach of Contract (Against Varga)

38. Ayo re-alleges and incorporates the allegations contained in paragraphs 1-27 of this Complaint as is fully set forth herein.

39. This cause for breach of contract is asserted in the alternative to Count I.

40. This cause of action arises out of the breach of the Agreement and, therefore, according to the Agreement's choice of law clause, is governed by California law.

41. Ayo and Varga entered into a valid contract, the Agreement, on April 30, 2020.

42. Under the Agreement, Varga was required to sell, transfer, and deliver San Francisco International University Inc. stock certificates to Ayo and, in exchange, Ayo was to pay Varga $65,000.00.

43. Ayo performed under the contract by paying the purchase price of $65,000.00 to Varga.

44. Varga materially breached the Agreement by failing to transfer and deliver said stock certificates to Ayo.

45. As described above, Varga also materially breached the Agreement by misrepresenting his authority to sell the stock in the Company.

46. Ayo suffered damages as a result of Varga's material breaches in the amount of the purchase price, $65,000.00.

WHEREFORE, Ayo demands judgment against Varga for total damages to be determined at trial, but no less than $65,000, plus accrued and accruing pre- and post-judgment

interest, costs, attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNT III
### Vicarious Liability
### (Against the Law Firm)

47. Ayo re-alleges and incorporates the allegations contained in paragraphs 1-37 of this Complaint as is fully set forth herein.

48. This cause of action is for vicarious liability against the Law Firm under the doctrine of *respondeat superior*.

49. Varga made misrepresentations and omissions of material fact in violation of Section 10(b) of the Exchange Act, which induced Ayo to purchase the Company stock.

50. Attorney Varga made said misrepresentations and omissions of material fact in the course and within the scope of his employment at the Law Firm.

WHEREFORE, Ayo demands judgment against the Law Firm for total damages to be determined at trial, but no less than $65,000, plus accrued and accruing pre- and post-judgment interest, costs, attorney's fees, and such other and further relief as the Court deems just and proper.

Dated: November 10, 2022

Respectfully submitted,

Omar K. Ibrahem, P.A.
Attorney for Plaintiff
201 S. Biscayne Blvd., Suite 800
Miami, Florida 33131
Tel: 786.502.4837
E-Mail: omar@okilaw.com

By:  */s/ Omar K. Ibrahem*
Omar K. Ibrahem
Florida Bar No. 59045